THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ANTHONY J. LOMBARDI, Appellant.

Third Department, December 8, 1983

APPEARANCES OF COUNSEL

*E. Stewart Jones, Jr.,* and *Robert M. Cohen* for appellant.

*Sol Greenberg, District Attorney (Ilene R. Bergman* of
counsel), for respondent.

OPINION OF THE COURT

WEISS, J.

On April 2, 1982, defendant was charged in a three-
count indictment with burglary in the first degree, robbery
in the second degree and assault in the second degree,
stemming from an alleged illegal entry into an apartment
at the Woodlake Apartments in the Town of Guilderland at
approximately 9:15 P.M. on March 29, 1982. During the
course of this incident, one Edward DeNigris, a guest at
the apartment, was beaten and property taken from his
person. Following defendant's unsuccessful attempt to sup-
press certain identification testimony, tangible evidence

and an oral statement, he was convicted by a jury on all three counts. Thereafter, he was sentenced to concurrent terms of 6⅔ to 20 years, 4 to 12 years and 2 to 6 years, respectively, on the three counts. This appeal ensued.

Although defendant raises several contentions on this appeal, we focus our concern on whether his oral statement made at the time of arrest was obtained in violation of his right to counsel. The record establishes that on March 30, 1982, Detective Jay Cunningham received a directive to arrest defendant on the basis of two outstanding warrants. Cunningham testified he was unaware of the circumstances underlying the warrants, which apparently emanated from a search of defendant's apartment earlier that day, other than that they were drug related. That same evening, Cunningham and his partner, John Pariseau, observed defendant walking on an Albany street. At this point, they asked defendant his name and, when he identified himself, Cunningham advised him that they had warrants for his arrest. Cunningham testified that the following brief colloquy took place: "You have to come with us. He asked me why and I said, 'Well, don't you know what this is about?' He said, 'Is this about the beef with some guy named Ed?'" The suppression court determined that the statement "was freely and spontaneously made by the defendant without untoward questioning by the officer at the time". As a result, both Cunningham and Pariseau were permitted to testify at trial concerning the "beef with * * * Ed" statement. Defendant, who pursued an alibi defense, denied making the remark and asserted that after he was placed under arrest and en route to the police station, the investigator "asked me did I do the job on Eddie DeNigris the night before and I said that I just don't know this Eddie DeNigris or anything about what happened". From this testimony, it is obvious that the statement sought to be suppressed bore significantly on the viability of defendant's alibi defense and his over-all credibility.

■ We recognize that defendant's right to counsel indelibly attached upon the filing of the accusatory instruments which provided the basis for the issuance of the arrest warrants (*People v Samuels,* 49 NY2d 218, 222-223).

As such, the police could not question him in the absence of counsel. It is further clear that defendant was not advised of his *Miranda* warnings. The People urge, however, that the statement was properly admitted as a spontaneous declaration. Without question, voluntary statements are admissible provided the defendant spoke with genuine spontaneity. The People bear the burden of proof on this issue (see *People v Stoesser*, 53 NY2d 648) and the exception for spontaneous statements is narrowly construed (see *People v Grimaldi*, 52 NY2d 611, 617). Not all remarks made by law enforcement personnel constitute impermissible interrogation (*People v Lynes*, 49 NY2d 286, 294-295; *People v Hopkins*, 86 AD2d 937, 939, affd 58 NY2d 1079). Our inquiry is essentially to determine whether the police conduct should reasonably have been anticipated to evoke a statement from defendant and whether the statement was made without apparent external cause (*People v Rivers*, 56 NY2d 476, 480).

In view of the nature of the exchange, we can only conclude that Cunningham's question was designed to elicit some further reply from defendant. It must be emphasized that the remark was made immediately after defendant was advised he was under arrest. At this juncture, it would be unreasonable to suggest that Cunningham expected no reply. Clearly, the question calls for either a protest or an admission concerning the basis for arrest. To be distinguished are the factual settings in both *People v Rivers* (56 NY2d 476, *supra*) and *People v Lynes* (49 NY2d 286, *supra*). In *Rivers*, at the time the defendant inquired as to the basis of the charge, the officer was simply recording defendant's arrest in the station house log, a routine police activity. Further, the officer responded with a brief, impersonal statement not a question. Similarly, in *Lynes*, at the time of the defendant's inquiry concerning the warrant, the officer was merely escorting defendant to his cell and was in no way connected with the case under investigation. Again, the officer's response — "You should know, they are looking for you" — was a direct statement, not a question, which, allowing for the normal variations in language use, could easily have been construed as discouraging further colloquy.

Not so here, where in the midst of an on-street confrontation, the officer's response was nothing less than an invitation to speak. That defendant initiated the exchange is not controlling (*People v Rivers, supra,* p 479). Thus, we cannot agree that the record supports the trial court's conclusion that the statement was made spontaneously. While the People urge that Cunningham was unaware of the Woodlake incident and thus was not seeking to invoke an incriminatory remark relating to that incident, the fact remains that he should have reasonably anticipated some response. Particularly is this so since Cunningham testified at trial that he knew of the search conducted at defendant's premises earlier that day. Defendant's right to counsel having attached, the inquiry was improper. Accordingly, the statement should be suppressed, the conviction reversed, and a new trial ordered (*People v Lanahan,* 55 NY2d 711; *People v Gillespie,* 83 AD2d 712).

■ One further comment is warranted. Defendant has asserted that the trial court allowed cross-examination of certain alibi witnesses in violation of the principles enunciated in *People v Dawson* (50 NY2d 311). Although we have already concluded that a new trial is required, since the argument centers upon alleged trial error, some clarification of the *Dawson* rule is appropriate. The controversy centers around the following cross-examination of alibi witness Hoffman:

"Q. Now, between that time, on March 29 or a few days after, and today, did you ever go the Albany Police Department?

"Mr. Zumbo: Objection, your Honor. I'd like a conference at the Bench, if I may.

"The Court: Overruled."

At this juncture, the People were allowed to impeach Hoffman by demonstrating his failure to come forward with the alibi. Two other alibi witnesses were similarly questioned, but without objection. Contrary to the People's interpretation, the cautionary procedures outlined in *Dawson* are not discretionary, but mandated to ensure a proper exercise of the court's discretion (*People v Dawson, supra,* p 322; see *People v Burgos,* 50 NY2d 992). Consequently, when the attempt to impeach Hoffman com-

menced, the trial court was required to conduct a Bench conference to determine the reason for the witness' prior silence. That *Dawson* indicates a Bench conference "should" be conducted does not render this procedure optional. The objective of ensuring an examination conducted in good faith cannot be achieved absent adherence to these guidelines, nor can a proper foundation be established without the inquiry. While counsel did not elaborate on his objection, his request for a Bench conference signaled a potential *Dawson* problem. Accordingly, it was incumbent on the trial court to comply with the request and the failure to do so violated the spirit, if not the letter, of *Dawson* (*People v Reed,* 83 AD2d 645). Having so determined, we need not reach the remainder of defendant's contentions.

The judgment should be reversed, on the law and the facts, and a new trial ordered.

SWEENEY, J. P., KANE, CASEY and LEVINE, JJ., concur.

Judgment reversed, on the law and the facts, and a new trial ordered.