People v Bellaire (2025 NY Slip Op 51335(U))

[*1]

People v Bellaire

2025 NY Slip Op 51335(U)

Decided on August 27, 2025

County Court, Wyoming County

Cianfrini, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 27, 2025
County Court, Wyoming County

The People of the State of New York

against
Michael Bellaire, Defendant.

Indictment No. 9210

Vincent A. Hemming, Esq.
Wyoming County District Attorney
Norman P. Effman, Esq.[FN1]
Nicholas T. Texido, Esq.
Attorney for the Defendant

Melissa Lightcap Cianfrini, J.

The Defendant, Michael Bellaire (hereinafter, "the Defendant"), claiming to be aggrieved by an unlawful or improper acquisition of evidence, has moved to suppress statements made by him on or about November 6, 2024 to Village of Warsaw Police Department (hereinafter "WPD") Chief Peter Hoffmeister, (hereinafter "Chief or Chief Hoffmeister") on the grounds that they were involuntarily made within the meaning of CPL § 60.45. A Huntley hearing was conducted on May 16, 2025. During the hearing, the Court admitted into evidence a recording consisting of Chief Hoffmeister's body worn camera footage received as People's Exhibit 1. Supplemental briefs were filed by Wyoming County District Attorney Vincent A. Hemming on June 24, 2025 and Attorney Nicholas T. Texido
 on August 12, 2025.
Findings of Fact
Chief Peter Hoffmeister's Testimony
The People called one witness, WPD Chief Hoffmeister, during the hearing. The Court [*2]credits the testimony of the Chief based upon his demeanor while testifying on the stand, his ability to recall the events in question and that his testimony was consistent with the events captured on the footage contained on his BWC. 
The Court admitted into evidence as Exhibit "1" by consent of the parties, a recording consisting of all of law enforcement's Body Worn Camera (hereinafter "BWC") footage. The Defendant waived extradition and was transported by the United States Marshals Service ("the Marshals") from Arizona to New York. On April 20, 2024, the Chief met the Marshals at the Buffalo Niagara International Airport to take the Defendant into custody pursuant to an arrest warrant and transport him to the Wyoming County Jail. The Defendant was shackled at all pertinent times.
The Chief testified at the hearing that he knew he was unable to question the Defendant due to the issuance of an arrest warrant. As such, he did not administer Miranda warnings to the Defendant. During his interactions with the Defendant at the airport parking lot, the Chief told the Defendant, "I am not going to ask you any questions about this incident . . . ." Shortly thereafter, the Chief informed the Defendant of the charges lodged against him. The Defendant stated, "I am not going to lie to you, two of those are correct. Two of those are not." Immediately after these statements, the Chief asked the Defendant "can you elaborate?" The Defendant continued to speak with the Chief in the absence of counsel and Miranda warnings. 

Conclusions of Law
An admission is admissible at trial in this state only if its voluntariness is established by the People beyond a reasonable doubt. The burden is on the People to establish that the Defendant made a voluntary, knowing and intelligent waiver of his rights to the police or, in the alternative, that the statements made were spontaneous and not in response to police questioning.
The Court finds that the Defendant's statements immediately after being advised of the charges were spontaneous in nature. This Court recognizes that defendant's right to counsel indelibly attached upon the filing of the accusatory instruments, which provided the basis for the issuance of the arrest warrants (People v. Samuels, 49 NY2d 218, 222—223). As such, the police could not question him in the absence of counsel. It is further clear that the Defendant was not advised of his Miranda warnings. The People urge, however, that the statements should be admitted as a spontaneous declaration. Without question, voluntary statements are admissible, provided the defendant spoke with genuine spontaneity. To be spontaneous, a statement must not be the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed (People v. Maerling, 46 NY2d 289, 302—303).
The People bear the burden of proof on this issue (see People v. Stoesser, 53 NY2d 648) and the exception for spontaneous statements is narrowly construed (see People v. Grimaldi, 52 NY2d 611, 617). Not all remarks made by law enforcement personnel constitute impermissible interrogation (People v. Lynes, 49 NY2d 286, 294—295; People v. Hopkins, 86 AD2d 937, 939, aff'd. 58 NY2d 1079). The inquiry is essentially to determine whether the police conduct should reasonably have been anticipated to evoke a statement from defendant and whether the statement was made without apparent external cause (People v. Rivers, 56 NY2d 476, 480). This Court finds that the People met their burden on this issue. Specifically, there was no police conduct which would reasonably have been anticipated to evoke a declaration from the Defendant after he was advised of the charges filed against him (People v. Aguanno, [*3]125 AD2d 579, 580 citing People v. Lynes, 49 NY2d 286, 295; People v. Lanahan, 55 NY2d 711; People v. Maerling, 46 NY2d 289).
However, as it relates to any statements made by the Defendant following the Chief's request to elaborate[FN2]
, those statements are suppressed as the Defendant's right to counsel had indelibly attached and he was questioned by law enforcement in the absence of counsel. As such, all statements made after the question "could you elaborate?" are hereby SUPPRESSED in its entirety.
The People's reliance upon the doctrine of attenuation is rejected. "The attenuation doctrine requires a court to consider 'the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct' application of the attenuation doctrine is a mixed question of law and fact" (People v. Bradford, 15 NY3d 329, 333 [2010]). Courts have considered numerous factors when determining whether there was sufficient attenuation, such as the passage of time between the improper questioning and the post-Miranda statement, whether the two statements were part of a single continuous chain of events, whether the questionings were done in different environments, and whether the pre-Miranda statement were used or exploited during the later questioning.
Here and of particular note, no Miranda warnings were ever administered to the Defendant. Also, there were no intervening circumstances to attenuate the statement from the misconduct. Specifically, the Defendant was in the presence of the same officers during a lengthy vehicle transport from Buffalo to Warsaw, New York. There was no change in personnel or environment to support any attenuation in this case. As such, the People have not established beyond a reasonable doubt that the remaining statements were lawfully obtained.
Accordingly, Defendant's motion is GRANTED in part and DENIED in part. The foregoing constitutes the decision and order of the court.
DATED: August 27, 2025
Warsaw, New York
HON. MELISSA LIGHTCAP CIANFRINI
Acting Wyoming County Court Judge

Footnotes

Footnote 1: While reviewing discovery, Assistant Public Defender Effman discovered that his office had a conflict of interest and sought to be relieved as counsel, which was granted by this Court. Attorney Nicholas T. Texido was appointed to this matter on July 9, 2025.

Footnote 2: The People concede that lines 5 through 13 on page 13 of the BWC transcript are not admissible.